FIRST DIVISION
April 21, 2008

No. 1-06-2323

| | | |
|---|---|---|
| HORACE FOX, JR., Trustee in | ) | Appeal from the |
| Bankruptcy for Miriam Draiman, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLENN SEIDEN; SARA M. COLLINS; | ) | No.  06 L 9362 |
| GLENN SEIDEN AND ASSOCIATES, P.C.; | ) | |
| an Illinois Professional Corporation, | ) | |
| and AZULAY, HORN AND SEIDEN, LLC, an | ) | |
| Illinois Limited Liability Company, | ) | The Honorable |
| | ) | Kathy M. Flanagan, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The plaintiff, Horace Fox, Jr., as trustee in bankruptcy for Miriam Draiman, filed a one-count amended verified complaint against the defendants, Glenn Seiden, Sarah M. Collins, Glenn Seiden & Associates, P.C., and Azulay, Horn & Seiden, LLC,[1] alleging legal malpractice.  The plaintiff's legal malpractice claim arises from a judgment ordering Miriam to pay more than $1 million in attorney fees.  It is Miriam's position that she is not liable for the attorney fees and, but for the law firm's

---

[1] The defendants in this case are individual attorneys and a law firm that has undergone numerous changes during the time period relevant to this appeal.  For the sake of clarity, the law firm and the individual attorneys will be referred to as "the law firm" collectively, or individually where necessary.

negligence, the judgment for fees would not have been entered against her.  Upon the law firm's motion pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2004)), the trial court dismissed the verified amended complaint, finding it failed to properly allege actual damages and proximate cause.  The plaintiff appeals.  We reverse.

BACKGROUND

Because this case arises upon a section 2-615 motion to dismiss, the facts are taken from the face of the plaintiff's amended complaint and the attached documents.  Iseberg v. Gross, 227 Ill. 2d 78, 81, 879 N.E.2d 278 (2007).

The legal malpractice complaint at issue in this appeal stems from the law firm's representation of Miriam Draiman, her husband Yehuda Draiman, and several corporations held by Miriam, in the final stages of the case, Multiut Corp. v. Draiman, Nos. 01 CH 9989, 01 CH 20337, filed in the circuit court of Cook County in 2001 (the underlying litigation).

I.  The Underlying Litigation: Trial Proceedings

The underlying litigation involved a bitter family dispute.  Yehuda's brother, Nachshon, was the president of Multiut Corporation (Multiut), which provides energy consulting and energy management services.  Yehuda and Miriam were both Multiut employees.

In its 10-count complaint, Multiut alleged Yehuda and

**2**

Miriam, with the intent of confusing Multiut's customers, conspired to divert business from Multiut by forming various corporations, including M. Draiman Corporation, Multiut Electric, Incorporated, U.S. Gas & Energy Corporation, U.S. Gas, Electric & Telecommunications Corporation, and U.S. Utilities Corporation (the corporate defendants).  Count V of the complaint alleged Yehuda and the corporate defendants, but not Miriam, violated provisions of the Illinois Uniform Deceptive Trade Practices Act (the Act) (815 ILCS 510/1 et seq. (West 2000)).  In addition to injunctive relief and monetary damages, Multiut sought payment of attorney fees and costs in count V.  Count VII, the only count in which Miriam was individually named, alleged Yehuda, Miriam, and some of the corporate defendants committed civil conspiracy in diverting business from Multiut.

Yehuda, Miriam, and the corporate defendants were initially represented in the underlying action by the law firm.  The law firm subsequently withdrew, and Yehuda, Miriam, and the corporate defendants were represented by Altheimer and Gray.  Following a bench trial that lasted several weeks, the trial court found in favor of Multiut in an order entered on January 17, 2003.  Relevant to this appeal, the trial court assessed damages in the amount of $250,000 against Miriam.  The court also assessed damages against Yehuda and granted injunctive relief.  Regarding count V, the court stated, "[H]aving found that Yehuda Draiman

3

has purposely engaged in deceptive trade practices, it is this court's determination that attorneys' fees and costs in connection with the prosecution of this cause be awarded to the Plaintiff and against the Defendants." The court ordered counsel for Multiut to submit an accounting of fees and costs within 30 days.

Altheimer and Gray subsequently withdrew from the case. On March 11, 2003, the law firm was retained again and filed a limited appearance "for [the] purpose of any post-trial motions prior to appeal."

On August 26, 2003, the trial court entered an order drafted by Multiut's attorney stating, in relevant part, "Judgment is entered on behalf of plaintiff and against defendants in the amount of $1,002,046." The law firm, on September 19, 2003, filed a "Motion to Clarify the Judgment Order of January 17, 2003 and Order of August 26, 2003" ("motion to clarify"). On September 22, while the motion to clarify was pending, the law firm filed a notice of appeal. The trial court, on September 30, ruled it lacked jurisdiction to consider the motion to clarify "in light of the pending appeal."

II. The Underlying Litigation: Appellate Proceedings

Yehuda and Miriam sought review of the trial court judgment in this court. Yehuda was initially represented on appeal by the law firm, and Miriam and the corporate defendants were

**4**

represented by different counsel.  During the lengthy history of the appeal, the law firm filed a motion to withdraw.  We allowed the motion, and Yehuda proceeded on appeal pro se.

On January 30, 2004, one justice of this court entered an order finding that because Miriam was not named as a defendant in count V of the underlying complaint--the count that resulted in the $1,002,046 attorney fee award--she was not liable as to that portion of the judgment.  Multiut filed a petition for leave to appeal that order in our supreme court.  Miriam's counsel was also permitted to withdraw, and Miriam proceeded pro se.

While leave to appeal the January 30, 2004, order was pending, this court, on July 22, 2005, filed an opinion affirming the judgment of the trial court.  Multiut Corp. v. Draiman, 359 Ill. App. 3d 527, 834 N.E.2d 43 (2005).  In our opinion, we concluded that the evidence at trial established the defendant corporations were the alter egos of Yehuda and Miriam.  Multiut, 359 Ill. App. 3d at 533, 538.  In response to Yehuda's contention that the $1,002,046 attorney fee award was unreasonable, we relied on the proposition that issues raised in a notice of appeal but not argued in the appellate court are waived for purposes of appeal.  We held Yehuda forfeited his contention because it was not made in his opening brief.  Multiut, 359 Ill. App. 3d at 539.  Regarding Miriam's liability for the attorney fee award, we stated:

"As to Miriam's liability for the fee award, she makes no argument other than remarking in the conclusion of her appellate brief that this court 'reversed the assessment of *** attorney fees.' Miriam presumably refers to the *** order entered on January 30, 2004, and signed by one justice of this court ***.

Multiut argues that although Miriam apparently refers to the January 2004 order in contending that this court has reversed the fee award, that order has no effect on this appeal. Multiut asserts that an order signed by one appellate court justice has no operative effect, and it has appealed that issue to the Illinois Supreme Court [citation].

Multiut contends that Yehuda and Miriam, in their joint answer to Multiut's petition in support of the fee award, did not argue that Miriam was not liable for the fees. Multiut points out that Miriam was represented by counsel at the hearing on the fee petition who did not contest her

liability, and that although Miriam later
argued in a motion to clarify the fee award
that her liability should be reduced because
of her lower degree of culpability, she did
not assert that she bore no liability for the
fee award." Multiut, 359 Ill. App. 3d at
539-40.

We held Miriam's challenge to the fee award was forfeited
for purposes of review, as she failed to respond to Multiut's
arguments and "offer[ed] no legal argument that would free her
from the judgment against her and the other defendants."
Multiut, 359 Ill. App. 3d at 540. We also noted that at the time
our opinion was entered, the supreme court had not yet ruled on
Multiut's appeal of the January 30, 2004, order. Multiut, 359
Ill. App. 3d at 540.[2]

_____

[2] We take judicial notice of the following facts. On
September 29, 2005, the supreme court denied Multiut's petition
for leave to appeal. Multiut, 216 Ill. 2d 619 (2005). The
court, however, entered a supervisory order directing us to
vacate the January 30, 2004, order and reconsider it with a full
panel. On November 18, 2005, we vacated the January 30, 2004,
order. Referencing our July 22, 2005, opinion, we held the
motion upon which the January 30, 2004, order was entered was
moot.

**7**

### III. Bankruptcy Proceedings

On May 23, 2005, Miriam filed a chapter 13 (11 U.S.C. §1301 et seq. (2000)) bankruptcy petition in the Northern District of Illinois. The bankruptcy court converted the petition to a chapter 7 (11 U.S.C. §701 et seq. (2000)) petition. On July 1, Multiut filed a motion for relief from the automatic stay in which it requested that the court lift or modify the automatic stay. On July 25, the court granted Multiut's motion.[3]

### IV. The Legal Malpractice Complaint

On March 27, 2006, the plaintiff filed a one-count amended verified complaint alleging legal malpractice. The complaint

---

[3] In an attempt to shed further light on the bankruptcy proceedings, the law firm has attached a decision from the federal bankruptcy court entered on December 22, 2006, to its brief. While we recognize courts may take judicial notice of public records (Nordine v. Illinois Power Co., 32 Ill. 2d 421, 428, 206 N.E.2d 709 (1965)), the decision has no bearing on the outcome of this case. It is well settled that "[f]acts not alleged in or attached to the complaint cannot support a section 2-615 motion." Visvardis v. Eric P. Ferleger, P.C., 375 Ill. App. 3d 719, 723, 724, 873 N.E.2d 436 (2007). As the bankruptcy decision was entered subsequent to the dismissal order in this case, and, therefore could not have been considered by the trial court, we will not consider it on appeal.

alleged Miriam and the law firm entered into an attorney-client relationship, the law firm had certain duties arising out of the attorney-client relationship, and the law firm breached its duties in three ways: (1) by failing to argue to the trial court that it lacked authority to award attorney fees against Miriam under the Act because she was not a named defendant in that claim; (2) by failing to catch the imprecise language used in the August 26, 2003, order that the judgment of $1,002,046 was entered against the " 'defendants' generally rather than [the] 'defendants named in Count V *** for violations of the [Act]' "; and (3) by failing to preserve the liability for attorney fees issue for appeal.

The amended complaint made several factual allegations. It alleged that at the August 26, 2003, hearing on Multiut's fee petition, the law firm failed to argue that imposition of attorney fees against Miriam was improper. The complaint further alleged that although the law firm was shown a copy of the order drafted by Multiut's attorney stating, "Judgment is entered on behalf of plaintiff and against defendants in the amount of $1,002,046," no objection to the "imprecise language" was raised. Further, although the law firm filed a motion to clarify the fee award, the law firm "failed to recognize the issue of the wrongful imposition of an award of attorneys' fees against [Miriam] pursuant to a claim in which she was not even named as a

**9**

defendant."  Additionally, the trial court was divested of jurisdiction to rule on the motion when the law firm filed a notice of appeal "only one business day later."  Therefore, the amended complaint alleged, "even if [the law firm] had correctly argued that the attorney fee award against [Miriam] was beyond the trial court's authority (since she was not named as a defendant in Count V) -- which they did not -- they nevertheless *** prevented correction by the trial court by divesting it of jurisdiction."

The amended complaint further alleged that Miriam initiated bankruptcy proceedings in federal court, and that on July 25, 2005, the federal court lifted the automatic stay.  According to the amended complaint, since the entry of the July 25 order, "Multiut's collection efforts have proceeded undaunted, as if the Bankruptcy proceeding did not exist."  The amended complaint alleged Miriam's beneficial interest in a land trust holding title to her home, was sold pursuant to a judicial sale, with Multiut placing the highest bid.  It also alleged Multiut obtained a court order for turnover of Miriam's interest in certain corporations, and, on September 21, 2005, Miriam was forced to sign an irrevocable stock power, which turned over her interest to the Cook County sheriff for judicial sale.  The amended complaint stated, "In short, Multiut has obtained and [Miriam] has made partial payment towards reducing the amount

10

[Miriam] owes to Multiut, and Multiut's collection efforts continue unabated with no relief in sight for [Miriam]."

The amended complaint further alleged:

"38.  But for [the law firm's] negligence and malfeasance, [Miriam] would not have had judgment entered against her for attorneys fees under the [Act]. Even if judgment had been erroneously entered against her in the trial court, the issue would have been preserved for appeal and reversed by the Appellate Court but for the negligent and reckless conduct of [the law firm.]

39.  As a direct, actual and proximate cause of the breaches of the duty of reasonable care by [the law firm], [Miriam] has suffered and continues to suffer damages in the amount of at least $1,234,053.96, constituting the judgment for attorneys fees and costs in the amount of $1,002,046 plus interest at a rate of nine percent per annum ***.

40.  Beyond the entry of the judgment and the accrual of interest, [Miriam] has been damaged and continues to be damaged

**11**

through Multiut's aggressive efforts to collect the full amount of the judgment, which, despite partial satisfaction through the sale of [Miriam's] beneficial interest in the land trust, wage garnishment, and turnover of her beneficial interest in certain corporations, and other means, remains due, owing, and fully subject to collection. [The law firm's] breaches of the duty of reasonable care is the direct, actual, and proximate cause of this damage to [Miriam]."

The law firm filed a section 2-615 motion to dismiss the amended complaint. The law firm argued the plaintiff failed to adequately plead actual damages and proximate cause. The trial court granted the motion, finding the complaint "lack[ed] the specific, relevant factual allegations necessary to state a cause of action for legal malpractice." (Emphasis in original.) Although the trial court allowed Miriam leave to file a second-amended complaint, Miriam opted to stand on her amended pleading. This timely appeal followed.

## ANALYSIS

A motion filed pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint. Borowiec v. Gateway

**12**

_2000, Inc._, 209 Ill. 2d 376, 382, 808 N.E.2d 957 (2004). When a section 2-615 motion is granted, the issue on appeal is whether the allegations in the complaint, when liberally construed, taken as true, and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. _Borowiec_, 209 Ill. 2d at 382; _Visvardis v. Ferleger_, 375 Ill. App. 3d 719, 723-24, 873 N.E.2d 436 (2007); _Kopka v. Kamensky & Rubenstein_, 354 Ill. App. 3d 930, 933, 821 N.E.2d 719 (2004). "When ruling on a section 2-615 motion, a trial court is to dismiss the cause of action only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery." _Borowiec_, 209 Ill. 2d at 382-83. At this stage, the plaintiff is not required to prove his or her case; rather, the plaintiff need only allege sufficient facts to state all of the elements of the cause of action. _Visvardis_, 357 Ill. App. 3d at 724. Our review is _de novo_. _Hadley v. Illinois Department of Corrections_, 224 Ill. 2d 365, 370, 864 N.E.2d 162 (2007); _Kopka_, 354 Ill. App. 3d at 933.

To state a cause of action for legal malpractice, the plaintiff must allege facts to establish (1) the defendant attorney owed the plaintiff client a duty of due care arising from an attorney-client relationship, (2) the attorney breached that duty, (3) the client suffered an injury in the form of actual damages, and (4) the actual damages resulted as a

**13**

proximate cause of the breach.  <u>Governmental Interinsurance Exchange v. Judge</u>, 221 Ill. 2d 195, 199, 850 N.E.2d 183 (2006); see also <u>Tri-G, Inc. v. Burke, Bosselman & Weaver</u>, 222 Ill. 2d 218, 225-26, 856 N.E.2d 389 (2006).  At issue in this case are the elements of actual damages and proximate cause.

## I.  Actual Damages

The plaintiff contends her amended complaint adequately pled the element of actual damages based on the existence of the attorney fee judgment against Miriam, which the plaintiff contends constitutes a sufficient pecuniary injury.  The plaintiff points our attention to <u>Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.</u>, 216 Ill. 2d 294, 306-07, 837 N.E.2d 99 (2005).

In <u>Northern Illinois Emergency Physicians</u>, the plaintiff sued the law firm that defended it in an indemnity claim arising from a medical malpractice case.  Our supreme court discussed the actual damages element of a legal malpractice claim in detail.

> "The injury in a legal malpractice action is not a personal injury [citation], nor is it the attorney's negligent act itself [citation].  Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. [Citations.]  For purposes of a legal

**14**

malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages. [Citation.] The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action. Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. [Citation.] The existence of actual damages is therefore essential to a viable cause of action for legal malpractice. [Citation.]

In a legal malpractice action, actual damages are never presumed. [Citation.] Such damages must be affirmatively established by the aggrieved client. [Citation.] Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed. [Citation.]

Making that demonstration requires more

**15**

than supposition or conjecture. Where the mere possibility of harm exits or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. [Citation.] Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined. [Citation.] " Northern Illinois Emergency Physicians, 216 Ill. 2d at 306-07.

The supreme court explained, "[W]here an attorney has been engaged to defend an action and the action is lost through the attorney's negligence, the amount of the judgment suffered by the client is, generally, a proper element of recovery in a malpractice proceeding against the attorney." Northern Illinois Emergency Physicians, 216 Ill. 2d at 307. As an example of the application of the general rule, the court cited Gruse v. Belline, 138 Ill. App. 3d 689, 486 N.E.2d 398 (1985).

The plaintiff cites Gruse as direct authority for the proposition that the entry of a judgment against a legal malpractice plaintiff in the underlying action constitutes actual damages in the subsequent legal malpractice claim, without any need to show payment of that judgment.

In Gruse, the plaintiff sued his former attorney, alleging

**16**

the attorney failed to properly advise the plaintiff about a mortgage contingency clause in a real estate contract the plaintiff signed but failed to perform. The jury returned a verdict in favor of the plaintiff and the attorney appealed. On appeal, one of the issues raised by the attorney was whether proof of injury was satisfied by the two judgments entered against the plaintiff, without a showing that he had paid either. As support for his contention that proof of damages was lacking, the defendant-attorney cited Goldzier v. Poole, 82 Ill. App. 469 (1898), for the proposition that "the payment or collectability of a judgment sustained on account of an attorney's malpractice must be shown before the amount of the judgment may properly be considered an element of damages." Gruse, 138 Ill. App. 3d at 697. The Gruse court found Goldzier inapposite because the case involved attorneys who were hired to prosecute, rather than defend, a claim. Gruse, 138 Ill. App. 3d at 697. "Generally, where an attorney is engaged to defend an action that is lost by his negligence, the amount of the judgment suffered by the client is a proper element of recovery in a malpractice proceeding against the attorney." Gruse, 138 Ill. App. 3d at 698. As an example of the application of this general rule, the court cited Montfort v. Jeter, 567 S.W.2d 498 (Tex. 1978), which held a judgment against the plaintiff resulting from his attorney's negligence "was evidence of actual damages even though it

**17**

remained unpaid at the time of trial." Gruse, 138 Ill. App. 3d at 698, citing Montfort, 567 S.W.2d at 499-500. Because the plaintiff in Gruse introduced into evidence two judgments and no contrary evidence was submitted, the court held the plaintiff's damages were proved at trial. Gruse, 138 Ill. App. 3d at 698.

Here, the law firm argues Miriam's damages remain speculative, unless and until she pays the $250,000 she does not contest owing in the underlying litigation. Until then, her claim of damages based on the unpaid fee judgment is insufficient to constitute actual damages for purposes of legal malpractice. The law firm relies primarily on Eastman v. Messner, 188 Ill. 2d 404, 721 N.E.2d 1154 (1999).

In Eastman, the supreme court answered the question whether an employer that paid workers' compensation benefits to an injured employee could assert a lien against the employee's recovery in a legal malpractice suit where the suit was based on the attorney's failure to timely file a personal injury action on behalf of the employee against an alleged third-party tortfeasor. In deciding the employer could not assert such a lien, the supreme court addressed the concept of actual damages in a legal malpractice suit.

> "[A] plaintiff who obtains recovery in a
> malpractice suit can be 'in no better
> position by bringing suit against the

**18**

attorney than if the underlying action against the third-party tortfeasor had been successfully prosecuted' [citation]. Thus, a plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case." Eastman, 188 Ill. 2d at 411-12.

To explain its holding, the supreme court set out a hypothetical to make clear that no double recovery would occur based on the employee's prior receipt of workers' compensation benefits. The supreme court held that damages in the legal malpractice case were limited to "the amount the employee lost as a result of the attorney's malpractice," taking into account the amount of benefits already received. Eastman, 188 Ill. 2d at 413. In other words, the employee's damages were limited to the net amount lost.

Applying the Eastman holding on the limitation of damages to the case at hand, the law firm argues, "it is not the judgment rendered against Miriam but rather the net that she paid to satisfy that judgment" that constitutes her actual damages. The argument goes, because the amended complaint does not "allege that Miriam has paid any portion of the attorney fee judgment," the complaint fails to allege actual damages. Because the Gruse

**19**

holding stands in direct opposition to its position, the law firm argues that Gruse "has been overruled sub silentio in Eastman."

We do not agree with the law firm's arguments or its suggestion that our supreme court works in mysterious ways.

While Eastman provides clear discussion of the legal malpractice action underlying the case, the case provides no authority for the position the law firm asserts in the context of this case. Eastman did not discuss the sufficiency of the pleadings to make out a legal malpractice action. Nor did it discuss the pleading requirements for the actual damages element of a legal malpractice action in the context of a failure to defend, rather than prosecute, a lawsuit.

To the extent Eastman provides any guidance on the damages issue before us, it makes clear, when the supreme court's holding in Northern Illinois Emergency Physicians is kept in mind, the distinction regarding damages in a legal malpractice action involving negligence in the prosecution of a case and negligence in the defense of a case.

In a prosecution-type case, damages cannot be established by the loss of the underlying case itself. It is not enough to allege the attorney negligently "lost" the case because "no action will lie against the attorney unless that negligence proximately caused damage to the client." Northern Illinois Emergency Physicians, 216 Ill. 2d at 306-07. The plaintiff must

**20**

be able to establish, in the case within a case, the damages "the plaintiff would have recovered had he been successful in the underlying case." Eastman, 188 Ill. 2d at 412. The plaintiff must demonstrate he "would have been compensated for an injury caused by a third party, absent negligence on the part of the plaintiff's attorney." Eastman, 188 Ill. 2d at 411. A judgment of "not guilty" rendered against a client, as a plaintiff in the underling case, is not the equivalent for purposes of actual damages in a legal malpractice case of a "guilty" verdict with damages assessed against a client, as a defendant in the underlying case. The plaintiff's burden in a defense-type legal malpractice case is generally addressed in Northern Illinois Emergency Physicians, 216 Ill. 2d 294.

In Northern Illinois Emergency Physicians, the appellate court reversed the trial court's grant of summary judgment, holding the entry of the indemnity judgment against the plaintiff Northern Illinois Emergency Physicians (NIEP), combined with that judgment remaining outstanding, was sufficient to overcome a summary judgment motion on actual damages. On appeal to the supreme court, NIEP argued the entry of the $4 million indemnity judgment was sufficient to constitute actual damages "even when the judgment remains unpaid at the time the malpractice claim is tried," citing as authority Gruse. Northern Illinois Emergency Physicians, 216 Ill. 2d at 308. The supreme court reversed, but

**21**

not on the actual damages issue, instead, on proximate cause.

The supreme court noted that NIEP was already jointly and severally liable for the $4 million judgment in the underlying medical malpractice action. The only actual effect of the indemnity judgment "was to change the party to whom the $4 million was owed." Northern Illinois Emergency Physicians, 216 Ill. 2d at 311. "The acts or omissions of NIEP's lawyers in defending against the indemnity claim therefore did not place NIEP in any worse position than it was already in." Northern Illinois Emergency Physicians, 216 Ill. 2d at 311. In finding no proximate causation from the lawyers' actions to the alleged damages, the supreme court expressly declined to reverse the appellate court's judgment "on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim on a motion for summary judgment." Northern Illinois Emergency Physicians, 216 Ill. 2d at 310. The supreme court also made clear, "Damages are considered to be speculative *** only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined." (Emphasis added.) Northern Illinois Emergency Physicians, 216 Ill. 2d at 307. The court, citing Gruse approvingly, noted the general rule that a judgment is a proper element of recovery in a malpractice suit against an attorney. Northern Illinois Emergency

Physicians, 216 Ill. 2d at 307. The supreme court has not sub silentio overruled Gruse.

In this case, while it is true the plaintiff did not allege in the amended complaint that any portion of the judgment had been paid, a judgment of $1,002,046 was entered against Miriam because of negligence attributed to the law firm, an allegation we must accept as true. In line with Gruse, we find the unpaid judgment against Miriam resulting from the law firm's negligence "was evidence of actual damages even though it remained unpaid." Gruse, 138 Ill. App. 3d at 698. We therefore find the plaintiff properly alleged actual damages. Consequently, the trial court erred in dismissing the amended complaint on that basis.

## II. Proximate Cause

Proximate cause is also an essential element of a legal malpractice claim. Governmental Interinsurance Exchange, 221 Ill. 2d at 199. To satisfy this element, the plaintiff must plead sufficient facts to establish that "but for" the negligence of the attorney, the client would have successfully defended the underlying suit. Albright v. Seyfarth, Fairweather, Shaw & Geraldson, 176 Ill. App. 3d 921, 926, 531 N.E.2d 948 (1988).

We look to the plaintiff's amended complaint to determine whether sufficient facts have been pled to survive a section 2-615 challenge on the element of proximate cause. As discussed in detail above, the plaintiff's amended complaint alleged that the

**23**

attorney fee award would not have been entered against Miriam but for the negligence of the law firm. The plaintiff alleged the law firm appeared at the hearing on Multiut's fee petition, yet made no objection to the "imprecise language" of the court's order awarding fees. Although the law firm filed a motion to clarify the fee award, it did not raise the contention that Miriam was not liable for the more than $1 million awarded in fees based on not being a named defendant in count V. The amended complaint also alleged that, even if the motion to clarify had raised this contention, the law firm foreclosed the trial court from ruling upon it by its precipitous filing of a notice of appeal. Thus, the plaintiff alleged, "But for [the law firm's] negligence and malfeasance, [Miriam] would not have had judgment entered against her for attorneys fees under the [Act]." We find the alleged facts, liberally construed, taken as true, and viewed in the light most favorable to the plaintiff, sufficiently plead the element of proximate cause.

Finally, the law firm argues that the sufficiency of the pleadings on proximate cause is no bar to upholding Miriam's liability for the attorney fee judgment. According to the law firm, Miriam's position would be the same even if the alleged negligence had not occurred for two reasons. See Northern Illinois Emergency Physicians, 216 Ill. 2d at 311 (NIEP not being placed in any worse position, it cannot be said its lawyers'

negligence proximately caused it any injury).

First, Miriam was personally liable for the attorney fee award under the alter ego doctrine. The law firm points to our prior Multiut Corp. opinion where we concluded "[t]he evidence presented at trial established that the defendant companies, including Multiut Electric and M. Draiman Corporation, were alter egos of Yehuda and Miriam, who both acknowledged forming the entities." (Emphasis added.) Multiut Corp., 359 Ill. App. 3d at 538. According to the law firm, because this court has previously found the corporate defendants, who are undisputably liable for the $1,002,046 attorney fee judgment, to be Miriam's alter egos, she would likewise be liable for the attorney fee award against the corporate defendants regardless of any of the alleged actions or inactions taken by the law firm. See, e.g., In re Rehabilitation of Centaur Insurance Co., 158 Ill. 2d 166, 173, 632 N.E.2d 1015 (1994); Ted Harrison Oil Co. v. Dokka, 247 Ill. App. 3d 791, 794-95, 617 N.E.2d 898 (1993) (piercing corporate veil will impose personal liability on a shareholder found to be alter ego of corporation). The plaintiff responds that our finding the defendant corporations to be alter egos of Miriam was erroneous, as without foundation in the underlying record, because the trial court in the underlying litigation only found the defendant corporations were alter egos of Yehuda. The plaintiff also argues that even if the defendant corporations

**25**

were Miriam's alter egos, liability would not necessarily follow because Miriam was not named as a defendant in count V and, consequently, had no opportunity to defend against that claim.

Second, the law firm points to the trial court's judgment against Miriam under the conspiracy charge in count VII. According to the law firm, she is therefore liable for the attorney fee judgment because "the effect of a conspiracy is to extend liability to each co-conspirator for all the tortuous acts committed by the other co-conspirators in furtherance of the conspiracy."

The argument regarding whether we properly found Miriam to be an alter ego of the defendant corporations is intriguing. It is also interesting to consider whether Miriam would nonetheless have to answer for the attorney fee judgment as a co-conspirator regardless of the alleged negligence of the law firm. However, we need not address these arguments at this stage of the litigation because this appeal arises from the grant of a section 2-615 motion to dismiss; the only issue on appeal is whether the allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. Borowiec, 209 Ill. 2d at 382. As discussed above, the plaintiff's amended complaint sets forth sufficient facts to plead the element of proximate cause. Consequently, the trial court erred in

**26**

dismissing the amended complaint on that basis as well.

CONCLUSION

Because the plaintiff's amended complaint alleged sufficient facts on the elements of actual damages and proximate cause, the trial court erred in dismissing the amended complaint. Accordingly, the judgment of the circuit court of Cook County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed; cause remanded.

CAHILL, P.J., and R. GORDON, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

**HORACE FOX, JR., Trustee in Bankruptcy for Miriam Draiman,**
**Plaintiff-Appellant,**

**v.**

**GLENN SEIDEN; SARA M. COLLINS; GLENN SEIDEN AND
ASSOCIATES, P.C.;an Illinois Professional Corporation, and AZULAY,
HORN AND SEIDEN, LLC, an Illinois Limited Liability Company,**
**Defendants-Appellees.**

**No. 1-06-2323**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: April 21, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**
**Cahill, P.J., and R. Gordon, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Kathy M. Flanagan, Judge Presiding**

| | |
|---|---|
| **For PLAINTIFF -**<br>**APPELLANT** | **Ashman Law Offices, LLC**<br>**161 North Clark Street, Suite 3575**<br>**Chicago, IL 60601** |
| **For DEFENDANTS -**<br>**APPELLEES** | **Elliot R. Schiff, Esq.**<br>**Schiff, Gorman & Krkljes**<br>**One East Wacker Drive, Suite 2850**<br>**Chicago, IL 60601** |